## Dougherty Estate

*John W. Frazier, 3rd,* for accountant.

*Bernard P. Carey, Jr.,* guardian and trustee ad litem.

VAN RODEN, P. J., January 31, 1967.—By this proceeding, the above named guardian presents its first account of the fund in its custody, consisting of assets belonging to incompetent's estate.

The guardian was appointed by decree of this court dated June 23, 1960. By order dated July 1, 1966,

the present account was directed to be filed in order to have audited and confirmed the substantial number of transactions which have occurred since appointment of the guardian and to adjudicate the question whether the court lawfully can and, if so, under the circumstances presented, should authorize the guardian to make substantial inter vivos gifts of the incompetent's surplus property so as to reduce death taxes. The guardian has proposed that it be authorized to make immediate gifts totalling $283,000 to incompetent's daughters.

The court is assured that all parties in interest have had actual notice of the filing of the account and of the time and place of audit.

Petitioner avers there are no unpaid claims against the estate of which it has notice or knowledge.

Accountant, in its supplement to the statement of proposed distribution, has requested the court to make at this time the following awards from incompetent's estate:

To Patricia Offley Otey and Sheila C. Newman, incompetent's daughters, in equal shares:

(a) All principal (at current values) in excess of a reserve of $50,000, which is to be awarded back to accountant.

(b) All income on hand, whether carried in the principal or income account, less a reserve to include $10,000, plus such additional amount as shall be determined necessary to pay the guardian's commission, counsel fees, gift tax involved and cost of transfers, which reserve is to be awarded back to accountant.

(c) All income received in future, to be distributed annually, in excess of that required for incompetent's care, administration expenses, income taxes and other expenses, gift taxes on annual distributions of income, and any amount necessary to maintain the reserve of $10,000 mentioned in (b) above.

Accountant refers to the following facts to support and justify its requested awards:

### INCOMPETENT'S CONDITION

1. Incompetent was born September 17, 1885, and is now 81 years of age. She has been, since June 6, 1960, a patient at The Institute of the Pennsylvania Hospital at 111 North 49th Street, Philadelphia, Pa.

2. Incompetent is presently the primary responsibility of Lauren H. Smith, M.D., consultant for medical development at the Institute of the Pennsylvania Hospital. She is also under the care of J. Martin Meyers, M.D., medical director at the same institute. Both of these doctors prepared current reports of incompetent's mental condition, and such reports were submitted for the court's inspection.

Incompetent's condition may be summarized as follows: Her mental diagnosis is senile dementia or chronic brain syndrome, associated with senile brain changes. She is unable to communicate with anyone in any effective way. It is questionable whether she recognizes anyone or is aware of her environment and surroundings. She is able to sit in a chair, take a few steps with her nurse or go outside in a wheelchair, but has to be fed, toileted and the like. Her prognosis indicates no change of any significant improvement in her condition and only gradual further deterioration.

Physically, in terms of age 81, her condition is generally good.

3. Incompetent has her own private room, her own registered nurse by day, and Dr. Smith is on a monthly retainer basis as her regular psychiatrist and physician. She also has the services of the hospital's house staff resident and other consultants are called in, as needed. The only possible additional care that may become necessary might be a second-shift nurse, or the temporary services of a medical specialist to meet

an emergency or because of some special terminal condition.

4. Incompetent's expenses at the institute are approximately $20,000 annually, comprised as follows:

Institute charges @ $950.00 per month   $11,400.00
Dr. Lauren H. Smith @ $100.00 per month   1,200.00
Nursing care and miscellaneous   7,400.00

  $20,000.00

Medical expenses actually paid in 1965 were $19,190.55.

### FINANCIAL CONDITION

5. The inventory of the assets of incompetent's guardianship estate, as filed by the guardian, showed assets with a total value of $3,228. The present assets, as reflected in the account presently before the court, have an approximate current market value of $323,-000. This figure includes investments of accrued income with approximate current value of $108,800. There is presently on hand (including receipts since closing the account) uninvested income slightly in excess of $10,000. The annual income from guardianship assets approximates $14,000.

6. In addition to the guardianship estate, incompetent is the beneficiary of an inter vivos trust created by her shortly before she became incompetent, of which Fidelity-Philadelphia Trust Company is trustee. The trust is revocable, and on death the principal is distributable to incompetent's estate. She is the sole income beneficiary, and the principal may be applied for her welfare. The approximate current value of the trust assets is $396,200, and the approximate annual income is $13,700.

7. In addition to the above, incompetent is the sole income beneficiary of six other separate trusts of which Fidelity-Philadelphia Trust Company is trustee. Neither she nor her estate has any interest in princi-

pal; nor may principal be invaded for her welfare. The combined approximate value of trust assets is $1,522,200, and the combined approximate annual income is $53,850.

8. Thus, from all sources, incompetent derives an income of approximately $81,550, based upon invested funds of approximately $2,241,400.

### INCOMPETENT'S TESTAMENTARY PLAN

9. At the time of the guardian's appointment, the local rules of this court did not require the display to the court of any last will of incompetent then in existence. There is, however, such a will, dated July 13, 1945, and a codicil dated September 15, 1947. Copies of them were submitted for the court's inspection at the time the present estate was called for audit. Incompetent's testamentary plan provides for an outright gift of tangible personalty to her daughters (and only issue) Patricia Offley Otey and Sheila D. Newman. An equal share in the residue is to be held in trust for each daughter for life and 21 years thereafter, with eventual distribution to her then living issue per stirpes, with cross-remainders.

10. At the time incompetent's will was made, neither daughter was married. At that time also, her own assets and her annual income were considerably less than they are at this time or were in 1960. The death of her sister, Caroline Perry Offley-Shore, in 1957, increased her income by more than $12,500, and after the death of another sister, Elizabeth R. S. Saportas, in 1960, by more than $25,000. The death of the latter increased incompetent's assets by more than $245,000 (at distribution values).

11. The next of kin of incompetent are her daughters: Patricia Offley Otey, 505 Baird Road, Merion, Pa. and Sheila D. Newman, 601 Maplewood Road, Wayne, Pa.

Patricia Offley Otey presently has two children who live with her, and whose names and ages are: Olivia E. Otey, aged 12, born March 4, 1954, and Alexander V. Otey, aged 7, born August 6, 1959.

Sheila D. Newman presently has three children who live with her, and whose names and ages are: Clyde F. Newman, 3rd, aged 20, born November 5, 1946, John W. Newman, aged 16, born September 4, 1950, and Peter V. Newman, aged 13, born March 7, 1953.

### Tax Considerations

12. For simplicity only, gross estates will be considered, with no allowance for administration and funeral expenses, etc.

(a) Assume gross estate as at present:

| | |
|---|---|
| Guardianship estate (including income to date) | $333,000 |
| Inter vivos trust | 396,200 |
| Life insurance (recently discovered) | $15,000 |
| Gross taxable estate | $744,200 |
| Federal & Pennsylvania taxes | $210,170 |

(b) Assume guardian estate reduced by a $283,000 gift, to $50,000.00: New gross taxable estate $461,200; Federal & Penna. taxes, $114,549.60; Death tax saving, $95,620.40.

(c) Gift tax on proposed gifts of $283,000: $46,600; Net tax saving, $47,020.40.

(d) Should untimely death require inclusion of gifts in gross estate, the gross estate would still be reduced by the amount of the gift tax paid to $695,-600. Federal and Pennsylvania taxes would then be $193,160, for a minimal net saving in death taxes of $17,010.

13. Incompetent's net annual income will be as follows:

Gross income (par. 8, supra): $81,550.
Less:

| | |
|---|---|
| Care of incompetent | $20,000 |
| Administration | 6,000 |
| Income tax | 25,000 |
| | $51,000 |

Approximate annual net income: $30,550

Unless currently distributed, this amount, plus income thereon, will be added to incompetent's gross estate at the top tax bracket, which in the first of the calculations above is 37 percent.

On the basis of the foregoing facts, accountant concludes:

14. (a) It is apparent that incompetent will never regain her competency.

(b) Incompetent is presently receiving as good care as money can purchase, in view of her condition. Her care costs approximately $20,000 annually, and this cost is not expected to increase appreciably except for the possible addition of another nurse, at approximately $7,000 per year.

(c) Independently of the guardian estate, incompetent receives $67,550 of income on $1,522,200 of principal better than 4.4 percent. At 3 percent, she would receive over $57,500, far in excess of any conceivable need. In any case, she has available in her inter vivos trust almost $400,000 of principal.

(d) It is suggested that incompetent's estate plans were not necessarily intended to deny the principal of her estate to her daughters for all time, but were the not unusual arrangements for two young and then unmarried girls. Incompetent's disposable estate was obviously much smaller at the time she made her will

than it had become during the years when she was approaching incompetency and was not likely to have given thought to the advantages of proper estate planning and the tax savings incident thereto.

(e) Although incompetent apparently did not have substantial excess funds during the years prior to her incompetency, she appears to have been generous with her daughters within her means. It is, therefore, reasonable to suppose that, in recent years, as her estate grew and her income became very substantial, she would have chosen to increase and regularize her bounty to her daughters, especially at a time when both have growing children.

(f) It is suggested that a gift of principal and/or income from the guardian estate will in no way prejudice the care of incompetent. As a present benefit to her daughters, when their financial commitments are reaching a peak, such a gift would appear to be almost certainly consistent with action which incompetent might have taken, were she able. Finally, such a gift is indicated as an appropriate measure of estate planning and management such as would have been recommended and almost certainly adopted by incompetent, were she competent.

After considering the supplement to the statement of proposed distribution and the testimony presented by incompetent's daughters, the court agrees with accountant's conclusions stated in subparagraphs 14 (a), (b), and (c) above.

With respect to subparagraphs 14 (d), (e), and (f) above, counsel for accountant has referred this court to Groff Estate, 38 D. & C. 2d 556, 16 Fiduc. Rep. 1 (O. C. Montg., 1965), wherein the Orphans' Court of Montgomery County recognized the equitable doctrine of "substitution of judgment" for the purpose of affecting certain distributions from an incompetent's estate to reduce potential death taxes.

However, in approving certain inter vivos gifts from incompetent's estate, such orphans' court stated, inter alia:

"The question submitted for adjudication is whether the court lawfully can, and if so under the circumstances should, authorize the guardian to make substantial inter vivos gifts of her surplus property *to those who would take that property on her death under her will.* . . .

"The incompetent here has been shown to have had a long-established policy of gifts to her son, his wife and her granddaughter. *The gifts here requested would not in any degree be in conflict with the disposition of the ward's property, as declared by her will, executed long before adjudication as incompetent*". (Italics added).

In Groff Estate, the court found support for the substitution of judgment theory in the case of In re Irénée du Pont, 194 A. 2d 309 (Delaware Chancery, 1963). In that estate, certain inter vivos gifts were authorized from incompetent's estate for the purpose of minimizing death taxes. However, the pattern of gifts was not in conflict with incompetent's will.

The troublesome aspect of the present case is that the pattern of distribution proposed by the guardian is substantially different from that prescribed by decedent's will, since the provisions of the latter require decedent's entire estate, except for her tangible personal property, to be retained in trust for the life of her daughters.

Although it is true that Fanny Sinnickson Dougherty, before being adjudicated an incompetent, made certain outright gifts to her daughters, the fact remains that she did not change the provisions of her will. As hereinabove stated, decedent's will was dated July 13, 1945, and a codicil was dated September 15,

1947. From the testimony, it appears that both of decedent's daughters were married prior to 1948. Counsel for accountant has maintained that the provisions of incompetent's will provide for not unusual arrangements for two young and unmarried girls. Although this argument is somewhat persuasive when applied to the period prior to the marriage of incompetent's daughters, it becomes much less persuasive when it is realized that incompetent had made no change in her testamentary plan during the 12 years which intervened between the marriage of her second daughter and her incompetency.

The testimony presented to the court with respect to the gifts made by incompetent to her daughters was general in nature. Incompetent, after the marriage of her daughters' and subsequent to the completion of the education of one of her sons-in-law, does not seem to have continued making regular and substantial gifts to her daughters. There is little or no evidence in the record that in the years immediately preceding the incompetency proceedings, Mrs. Dougherty increased the number or size of gifts to her daughters. This is true notwithstanding the fact that her economic condition was improving considerably during those years.

To authorize the distribution proposed by the guardian would be to permit too great a deviation from decedent's estate plan. It would result in diverting too many assets from incompetent's grandchildren. However, since the bulk of the appreciation in incompetent's estate occurred after she was declared incompetent, it seems reasonable to assume that, but for her incompetency, she would desire to give a certain portion of her estate outright to her daughters, as the natural objects of her bounty.

For the reasons hereinbefore stated, the proposed distribution by the guardian is hereby disapproved, and in its place, the following awards are made: . . .

## Amended Order

Petition and decree dated February 14, 1967, in which the adjudication dated January 31, 1967, is amended so that the awards made in said adjudication shall read as follows: Patricia O. Otey, daughter of incompetent, $25,000; Sheila D. Newman, daughter of incompetent, $25,000; trustees named in the will dated July 13, 1945, in trust, as though incompetent were already deceased; for the uses more fully set forth in item 3rd—all principal; Patricia Otey and Sheila D. Newman, in equal shares—all income.